UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  7/23/09
```

DANIEL SEARLES,

                              Plaintiff,

                    v.                              02 Civ. 6567 (PGG)

FRANK POMPILIO and CITY OF BEACON,          **ORDER**

                              Defendants.

PAUL G. GARDEPHE, U.S.D.J.:

        In this action, which arises over a disputed parking ticket, Plaintiff Daniel Searles

brings claims under 42 U.S.C. § 1983 for false arrest (Count 1), excessive force (Count 2),

violation of his First Amendment right to freedom of speech (Count 3), violation of his Fifth

Amendment due process rights to a fair trial (Count 4), deprivation of access to courts (Count 5),

and malicious prosecution (Counts 11 and 13), as well as common law claims for unlawful

imprisonment (Count 9), assault and battery (Count 10), and malicious prosecution (Count 12)

against the City of Beacon (the "City") and Beacon Police Officer Frank Pompilio.[1]  (3d Am.

Cmplt. ¶¶ 23–54, 73–117)  Counts 1–5 and 11 name Pompilio; Counts 9, 10, and 12 name both

defendants; and Count 13 is brought solely against the City.

        Pompilio has moved for summary judgment on Counts 1, 3–5, 9, 11 and 12.

(Docket No. 47)  The City joins in Pompilio's motion with respect to Counts 9 and 12, and has

separately moved for summary judgment on Count 13.[2]  (Docket No. 48)  For the reasons set

---

[1]  On February 26, 2007, Judge Robinson granted Searles's written application to dismiss his
state constitutional tort claims (Counts 6–8) with prejudice.  (Docket No. 35)

[2]  Neither defendant has moved for summary judgment on Count 10, which alleges that Pompilio
committed assault and battery, for which Searles asserts the City may be liable under a

forth below, Pompilio's motion is denied and the City of Beacon's motion is granted as to Count 13, but otherwise denied.

## DISCUSSION

Summary judgment is warranted where the moving party shows that "there is no genuine issue as to any material fact" and that it "is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008). In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. General Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

## I.     FACTS

At all relevant times, Pompilio was a police officer employed by the City and Searles resided at 1248 North Avenue, Beacon, New York. (City of Beacon R. 56.1 Stat. ¶¶ 2–4)[3] In early 2001, the City placed "No Trespass" signs on Sivers Place, a City-owned lot adjacent to Searles's residence. (Id. ¶¶ 5–7) The City received numerous complaints about vehicles parked on Sivers Place, and on June 5, 2001, Beacon Police Lieutenant Paul Schettino directed Officer Pompilio to investigate such a report. (Id. ¶¶ 8–10; Pompilio R. 56.1 Stat. ¶¶ 5–6) Schettino further instructed Pompilio to contact the owner of the adjacent property about

---

respondeat superior theory. Nor has Pompilio moved as to Count 2, which alleges that he used excessive force in arresting Searles.

[3] Unless otherwise noted, the cited statements of fact from the Defendants' Rule 56.1 Statements are admitted in Searles's Rule 56.1 Statement.

2

removing the vehicle. (City of Beacon R. 56.1 Stat. ¶ 14; Pompilio R. 56.1 Stat. ¶¶ 8–9)  After

observing a pick-up truck at that location, Pompilio issued a ticket; placed the ticket on the

truck's windshield; and knocked on the door of the adjacent home. (Pompilio R. 56.1 Stat. ¶¶ 5,

9–11)  When no one answered, Pompilio had the vehicle towed. (Id. ¶¶ 11–12)

      Searles, the vehicle's owner, signed and returned the parking ticket. (City of

Beacon R. 56.1 Stat. ¶¶ 16–17)  He indicated on the ticket that he wished to plead not guilty, and

a trial was scheduled for September 4, 2001 at 9:00 a.m. in Beacon City Court. (Id. ¶¶ 17–18)

After Searles arrived two hours late to court on September 4, Pompilio – who had left the

courthouse – was asked to return to court. (Id. ¶¶ 19–20)

      In a conference room outside the courtroom, Searles and Pompilio discussed the

ticket but were unable to reach agreement on a disposition. (Id. ¶¶ 21–22)  Searles then left the

conference room to enter the courtroom. (Id. ¶ 23)  Pompilio followed Searles and continued

talking to him on the way into the courtroom, where Municipal Court Judge Rebecca Mensch

was seated at the bench in conversation with Court Attorney Mark Glick. (Id. ¶¶ 24, 26)  New

York State Court Officers Robert Smrcka and Alan Dank were also present at the Beacon City

Court that day. (Id. ¶ 25)

      After entering the courtroom, Searles turned around to Pompilio and loudly said,

"I'm not a fucking idiot." (Id. ¶ 27)  Pompilio then advised Searles that he was under arrest. (Id.

¶ 28)  Officers Smrcka and Dank assisted Pompilio in arresting Searles, but they were initially

unable to place handcuffs on him.[4] (Id. ¶¶ 29–30)  During the attempt to handcuff Searles,

---

[4] Searles contends that, after "Pompilio was having trouble applying handcuffs," he "complied
with Defendant Pompilio's direction" "to lie face down on the floor, in between the benches of
the courtroom" and that Pompilio then "stomped on Plaintiff's head" and "continued to assault
and batter" Searles while he "lay on the floor." (Pltf. R. 56.1 Additional Stat. ¶¶ 26–30)

Officer Smrcka sustained injuries that required medical treatment.[5]  (Pompilio R. 56.1 Stat. ¶ 24)

Searles was eventually handcuffed and taken to the Beacon Police Department.  (City of Beacon

R. 56.1 Stat. ¶ 34)

   Searles was charged with Obstructing Governmental Administration in the

Second Degree, Criminal Contempt in the Second Degree, Resisting Arrest, and Disorderly

Conduct.  (Pompilio R. 56.1 Stat. ¶ 25)  On September 18, 2001, an assault charge was also filed

against Searles.  (Id. ¶ 26; Pltf. Resp. to Pompilio R. 56.1 Stat. ¶ 26)  Searles was later acquitted

of all charges, including the original parking ticket.  (Pompilio R. 56.1 Stat. ¶ 28)

   At all relevant times, the Beacon Police Department's Rules and Regulations

contained a "Use of Force" policy.  (City of Beacon R. 56.1 Stat. ¶ 41)  In relevant part, the "Use

of Force" policy provides:

> 1. The use of physical force, by officers in this Department is
> limited only to the extent as authorized in Article 35 of the Penal
> Law of the State of New York.
>
> . . .
>
> 3. The indiscriminate and unauthorized use of force is strictly
> prohibited.  The responsibility for the use of physical force rests
> solely on the officer using such physical force.
>
> . . .
>
> 5. All cases of complaints . . . will be investigated by the Detective
> Lieutenant and the Captain.  Members will be held accountable
> when such complaints are found to be factual.
>
> 6. Whenever a member uses any physical force, such use will be
> reported, in writing, to the Chief.

---

[5]  Searles denies that Smrcka's injuries were the "result of the altercation" and insists that
Smrcka simply "banged his elbow on the wooden bench." (Pltf. R. 56.1 Resp. to City of Beacon
¶ 33)

(Klasna Decl., Ex. J (Article 19 of the City of Beacon Police Department's Rules & Regulations) ¶¶ 1, 3, 5–6)

The "Use of Force" policy sets forth circumstances in which the use of physical force is justified and authorized. (Id. ¶ 2)  When a shift commander determines that an officer used a level of force that was outside of department policy, the commander has an obligation to make a report to the patrol lieutenant. (City of Beacon R. 56.1 Stat. ¶ 43)  If the patrol lieutenant's subsequent investigation reveals that the use of force violated department policy, the lieutenant is required to file an internal investigation report with the chief of police. (Id. ¶ 44) After the chief of police reviews such a report, it is reviewed by labor counsel, and in some instances by the district attorney's office. (Id. ¶ 45)  If an officer is found to have violated the department's policy regarding the use of force, a disciplinary action is then brought against the officer. (Id.)

Police Chief Richard Sassi, who met on a regular basis with the patrol lieutenant about such matters, completed an investigation regarding Searles's complaint about Pompilio's use of force. (Id. ¶¶ 47–48)  Before Searles's September 4, 2001 arrest, only one civilian complaint had been made against Pompilio; that complaint was brought in 1999 by Ramona Bowles, who alleged that Pompilio had pushed her while at a "call." (Id. ¶ 46)

## II.   FALSE ARREST AND UNLAWFUL IMPRISONMENT CLAIMS

Searles asserts that his arrest by Pompilio deprived him of his constitutional right to be free from unreasonable seizures of his person.  Searles was confined from approximately 12:30 p.m. on September 4, 2001 to the morning of September 5, 2001. (3d Am. Cmplt. ¶¶ 25–27)  Pompilio and the City of Beacon move for summary judgment on Plaintiff's false arrest and unlawful imprisonment claims (Counts 1 and 9) on the ground that Pompilio had probable cause

5

to arrest Searles for disorderly conduct, obstruction of governmental administration in the second degree, criminal contempt in the second degree, resisting arrest, and assault. (Pompilio Br. 6–9; City of Beacon Br. 2)

## A. **Applicable Law**

### 1. Elements of a False Arrest or Unlawful Imprisonment Claim

"In analyzing § 1983 claims for unconstitutional false arrest," this Court must "look to the law of the state in which the arrest occurred." Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004). "Under New York law, the elements of a false imprisonment [or false arrest] claim are: (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."[6] Curry v. City of Syracuse, 316 F.3d 324, 335 (2d Cir. 2003) (internal quotation marks omitted) (alteration in original).

### 2. Probable Cause Defense

"The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (internal citations omitted). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id. "Probable cause does not inquire into the arresting officers' subjective motivations, but rather

---

[6] "In New York, the tort of false arrest is synonymous with that of false imprisonment." Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991). Because the elements of Searles's false arrest and unlawful imprisonment state law claims are "identical[,]" they "will be treated as a single claim." Phelps v. City of New York, No. 04 Civ. 8570 (DLC), 2006 WL 1749528, at *2 n.2 (S.D.N.Y. June 27, 2006).

6

asks 'whether the officers' actions are objectively reasonable in light of the facts and

circumstances confronting them.'" Phelps, 2006 WL 1749528, at *2 (quoting Bryant v. City of

New York, 404 F.3d 128, 136 (2d Cir. 2005)) (internal quotation marks omitted). "Thus, under

both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is

appropriate if the undisputed facts indicate that the arresting officer's probable cause

determination was objectively reasonable." Jenkins v. City of New York, 478 F.3d 76, 88 (2d

Cir. 2007).

Moreover, "a claim for false arrest turns only on whether probable cause existed

to arrest a defendant[;] . . . it is not relevant whether probable cause existed with respect to each

individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of

arrest." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) (emphasis added). "Stated

differently, when faced with a claim for false arrest," this Court must "focus on the validity of

the arrest and not on the validity of each charge." Id. (emphasis in original).

Officer Pompilio and the City contend that Pompilio had probable cause to arrest

Searles for disorderly conduct, obstruction of governmental administration in the second degree,

criminal contempt in the second degree, resisting arrest, and assault. The elements of these

offenses are set forth below.

        a.     Disorderly Conduct

"To prove the crime of disorderly conduct under N.Y. Pen. L. § 240.20, the

prosecution must establish three elements: (i) the defendant's conduct must be 'public' in

nature, (ii) it must be done with 'intent to cause public inconvenience, annoyance or alarm' or

with recklessness as to 'a risk thereof,' and (iii) it must match at least one of the descriptions set

forth in the statute." Provost v. City of Newburgh, 262 F.3d 146, 157 (2d Cir. 2001) (citation

omitted). The disorderly conduct statute proscribes, inter alia: (1) engaging "in fighting or in

7

violent, tumultuous or threatening behavior"; (2) making "unreasonable noise"; or (3) "in a

public place," using "abusive or obscene language." N.Y. Penal Law § 240.20(3) (McKinney

2001).

           b.      Obstructing Governmental Administration in the Second Degree

           A person is guilty of obstructing governmental administration in the second

degree under New York law "when he intentionally obstructs, impairs or perverts the

administration of law or other governmental function or prevents or attempts to prevent a public

servant from performing an official function, by means of intimidation, physical force or

interference, or by means of any independently unlawful act." N.Y. Penal Law § 195.05

(McKinney 2001). Thus, "[t]he elements of the offense are: 1) intent; 2) obstruction or

impairment of a government function, or preventing or attempting to prevent the performance of

that function by 3) physical interference." Esmont v. City of New York, 371 F. Supp. 2d 202,

210 (E.D.N.Y. 2005).

           c.      Criminal Contempt in the Second Degree

           Under New York law, a person may be guilty of criminal contempt in the second

degree when he or she engages in: (1) "[d]isorderly, contemptuous, or insolent behavior,

committed during the sitting of a court, in its immediate view and presence and directly tending

to interrupt its proceedings or to impair the respect due to its authority;" or (2) "[b]reach of the

peace, noise, or other disturbance, directly tending to interrupt a court's proceedings." N.Y.

Penal Law § 215.50 (McKinney 2001). (See Randazzo Decl., Ex. M (Accusatory Instrument for

Violation of N.Y. Penal Law § 215.50))

           d.      Resisting Arrest

           Under New York law, "a person is guilty of resisting arrest when he intentionally

prevents or attempts to prevent a police officer or peace officer from effecting an authorized

arrest of himself or another person." N.Y. Penal Law § 205.30 (McKinney 2001). "It is well established in New York that 'probable cause to arrest is a prerequisite for making an authorized arrest,' and if there is no probable cause to arrest a person, that person 'cannot be guilty of resisting arrest.'" Curry, 316 F.3d at 336 (quotation omitted).

                e.     Assault

Under New York law, a person is guilty of assault in the third degree when (1) "[w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person;" or (2) "[h]e recklessly causes physical injury to another person." N.Y. Penal Law § 120.00 (McKinney 2001). A person is guilty of assault on a peace officer or police officer under New York law when, "with intent to prevent a peace officer [or] police officer . . . from performing a lawful duty, he causes serious physical injury to such . . . officer." N.Y. Penal Law § 120.08 (McKinney 2001).

## B.    **Legal Analysis**

Pompilio concedes that "there is a factual dispute as to what occurred once Plaintiff entered the courtroom." (Pompilio Br. 7) Indeed, because there are numerous material issues of fact as to Searles and Pompilio's conduct that day and whether Searles disrupted an actual court proceeding, this Court cannot find as a matter of law that Officer Pompilio's probable cause determination was objectively reasonable.

With respect to disorderly conduct, Pompilio claims that Searles loudly said, "I am not a fucking idiot" when he entered the courtroom. (City of Beacon R. 56.1 Stat. ¶ 27) But Searles alleges that he was merely responding to Pompilio's insult that Searles was a "fucking idiot," repeated at least three times while Searles was outside and then entering the courtroom. (Pltf. R. 56.1 Additional Stat. ¶¶ 21–24) Drawing all factual inferences in the non-movant's favor, this Court cannot conclude that it was objectively reasonable for Pompilio to believe that

9

Searles uttered this language "with intent to cause public inconvenience, annoyance or alarm, or [that he] recklessly creat[ed] a risk thereof." N.Y. Penal Law § 240.20 (McKinney 2001) Indeed, Searles asserts that he was merely responding to Pompilio's insults "in the courtroom, or at least at the doorway to same," and that he had "no intent . . . to disrespect the Court, but merely to respond to [Pompilio's] harassment." (Pltf. Br. 11–12; Pltf. Aff. ¶ 15; Pltf. R. 56.1 Additional Stat. ¶ 24) In short, there are material issues of fact concerning Searles's intent or recklessness with respect to "caus[ing] public inconvenience, annoyance or alarm."

As to criminal contempt and obstruction of governmental administration, there are material issues of fact as to whether the Beacon City Court was in session when this incident occurred. Searles has alleged that no proceeding was ongoing at the time (Pltf. Aff. ¶ 22; Pltf. R. 56.1 Resp. to City of Beacon ¶ 24) while the City claims that the Court was in session. (City of Beacon R. 56.1 Stat. ¶ 24) There are also disputed issues of fact concerning Searles's intent to commit these crimes. This Court cannot conclude as a matter of law that Officer Pompilio had probable cause to arrest Searles for criminal contempt or obstructing governmental administration.

With respect to the resisting arrest charge, Pompilio states that Searles was rolling around and kicking on the floor while the officers attempted to handcuff him (City of Beacon R. 56.1 Stat. ¶¶ 31–32), but Searles states that he complied with Pompilio's order to lie down on the floor and claims that Pompilio beat and stomped on him without provocation. (Pltf. R. 56.1 Resp. to City of Beacon ¶¶ 31–32; Pltf. R. 56.1 Additional Stat. ¶ 28) In any event, as noted above, a resisting arrest charge can only be sustained when there is probable cause for the underlying arrest.

With respect to the assault charge, Defendants claim that while trying to handcuff Searles, Officer Smrcka sustained injuries that required medical treatment and forced him to take time off from work. (City of Beacon R. 56.1 Stat. ¶ 33) Searles alleges, however, that Officer Smrcka merely bumped his elbow on a wooden bench and was not injured during the altercation. (Pltf. R. 56.1 Resp. to City of Beacon ¶ 33)

Because there are material issues of fact concerning the encounter between Searles and Pompilio in and around the Beacon City courtroom on September 4, 2001, this Court cannot rule as a matter of law that Officer Pompilio had probable cause to arrest Searles. Accordingly, Defendants' motion for summary judgment on Counts 1 and 9 must be denied.

## IV.   FIRST AMENDMENT FREEDOM OF SPEECH CLAIM AGAINST POMPILIO

Searles alleges that he had a First Amendment right to advise Pompilio that he was pleading not guilty to the parking ticket and to tell Pompilio that he was "not a fucking idiot." (3d Am. Cmplt. ¶¶ 37–39) Searles claims that Pompilio assaulted, battered, and arrested him as punishment for this speech. Id. In moving for summary judgment, Pompilio argues that Searles's First Amendment claim must be dismissed because he had probable cause to arrest Searles. (Pompilio Br. 9–10) As set forth above, because "there is a factual dispute as to what occurred once plaintiff entered the courtroom" (id. at 7), this Court cannot conclude as a matter of law that there was probable cause for Searles's arrest. Accordingly, Pompilio's motion for summary judgment on Count 3 is denied.

## V.   DUE PROCESS CLAIMS AGAINST POMPILIO

Searles alleges that Pompilio violated his due process rights and his right of access to the courts by assaulting, battering, and prosecuting him in an attempt to pressure him to plead guilty to the parking ticket, or to punish him for pleading not guilty. (Pltf. Br. 14) Searles

11

argues that because he was required to proceed to trial on five invalid criminal charges, he was hindered in his efforts to challenge the parking ticket. Pompilio moves for summary judgment on these claims, noting that Searles not only went to trial concerning the parking ticket but prevailed as to that violation. (Pompilio Br. 11) Pompilio also argues that to the extent Searles was denied access to the courts on September 4, 2001, this denial resulted from Searles's own criminal conduct. Id.

"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'" Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978) (citations omitted). "For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right." United States v. Goodwin, 457 U.S. 368, 372 (1982). Here, Searles had a right to persist in his plea of not guilty and to go to trial on the parking violation, and to be free of threats and intimidation in seeking to exercise that right. See Wells v. Ward, 470 F.2d 1185, 1188 n.3 (10th Cir. 1972) (example of action "taken under color of state law and held to be [a] deprivation[] of rights guaranteed by the Constitution and laws of the United States" is "the use of threats, intimidation and questioning to force an individual accused of crime to change his plea of not guilty to guilty") (citing Lewis v. Brautigam, 227 F.2d 124, 128–29 (5th Cir. 1955)).

Searles argues that in order to challenge the legality of the parking ticket he was forced to "proceed to trial on 5 other criminal actions, none of which were valid but all of which carried significant consequences if there was a conviction." (Pltf. Br. 14) Searles further contends that "Pompilio's actions thus added substantial pressure on the Plaintiff to 'cave in' and

plead guilty to something, or face possible incarceration." (Id.) Pompilio makes no response to these claims. In light of this failure and the issues of material fact regarding the courtroom altercation, this Court cannot conclude as a matter of law that Pompilio did not violate Searles's rights to due process and access to the courts. Accordingly, Pompilio's motion for summary judgment on Counts 4 and 5 is denied.

## VI.   MALICIOUS PROSECUTION CLAIMS

### A.   Malicious Prosecution Claims Against Pompilio

Searles brings malicious prosecution claims against Pompilio under Section 1983 (Count 11) and New York common law (Count 12) with respect to his prosecution for disorderly conduct, criminal contempt in the second degree, resisting arrest, and obstructing governmental administration in the second degree. (3d Am. Cmplt. ¶¶ 84, 99) In addition, Searles alleges that he sustained a loss of liberty when, following his arraignment, he was confined overnight at the Dutchess County Jail. (Id. ¶ 89) Pompilio moves for summary judgment on these claims on the ground that he had probable cause to arrest Searles. (Pompilio Br. 6)

As previously discussed, this Court cannot conclude as a matter of law that Pompilio had probable cause to arrest Searles. Accordingly, Pompilio's motion for summary judgment on Counts 11 and 12 is denied.

### B.   State Law Malicious Prosecution Claim Against City of Beacon

Searles alleges that the City is jointly and severally liable under a respondeat superior theory for Pompilio's malicious prosecution. (3d Am. Cmplt. ¶ 101) The City does not attempt to rebut Searles's respondeat superior argument, but simply joins Pompilio's motion. (City of Beacon Br. 2) The City's motion for summary judgment on this claim must be denied because, as discussed above, there are material issues of fact as to whether Pompilio had

13

probable cause to arrest Searles.  See Raysor v. Port of Authority of New York, 768 F.2d 34, 38

(2d Cir. 1985) (concluding that the Monell claim "was properly dismissed because there was no

showing that the injury was caused by execution of a custom or policy of the Port Authority," but

that "the actions for false arrest and malicious prosecution may proceed against the Port

Authority on a theory of respondeat superior").  See also Phelps, 2006 WL 1749528, at *8

(granting summary judgment with respect to § 1983 claims but denying summary judgment as to

state law claims based on respondeat superior theory, where municipality failed to show that its

"officers were acting outside the scope of their employment").

### C.    Section 1983 Claim Against City of Beacon

Searles's Section 1983 claim against the City is premised on the theory that the

"malicious prosecution of the Plaintiff by [Pompilio] was proximately caused by the failure of

Defendant City of Beacon to properly supervise and discipline its employee, [Pompilio]." (3d

Am. Cmplt. ¶ 106)  Searles further asserts that the City's failure to properly supervise and

discipline Pompilio "was due to the custom, practice, policy or usage of Defendant, City of

Beacon, of deliberate indifference to the constitutional and civil rights of those persons taken

into custody by the members of the Beacon City Police Department."  (Id. ¶ 107)  Searles alleges

that Pompilio "struck, assaulted[,]" and "beat persons in his custody both before and after the

September 4, 2001 incident with Plaintiff" (id. ¶¶ 108, 110), and that Pompilio "would 'cover'

these beatings of persons in custody by filing false and malicious accusatory instruments alleging

crimes such as resisting arrest, disorderly conduct and/or assault against the victims of [his]

beatings."  (Id. ¶ 111)  Searles contends that the "City of Beacon's supervisory officials knew of

[Pompilio's] violations of people's constitutional and civil rights" (id. ¶ 109), and "knew of this

practice of [Pompilio] and other officers of the Beacon City Police Department and failed to take

any effective disciplinary action against the said officer or officers."  (Id. ¶ 112)  According to

14

Searles, the alleged failure to properly discipline City police officers "was due to the deliberate

indifference of said supervisory officials to the constitutional rights of the Plaintiff and other

citizens of the City of Beacon." (Id. ¶ 113)

      The City argues that it is entitled to summary judgment on this claim because,

inter alia, Searles has "failed to demonstrate any evidence, in the record, to show that the CITY

had a custom or approved policy to use excessive force or the prosecution of any individuals nor

has plaintiff shown the CITY has exhibited a deliberate indifference with respect to the training,

supervising or disciplining of its employees." (City of Beacon Br. 7)  The City also argues that

Searles "failed to prove [that] the CITY maintained an action against him or maintained any

policy which resulted in the action against him." (Id. at 13)  The City further contends that –

even assuming Pompilio violated Searles's rights – there is no evidence of "deliberate

indifference" because Searles "has not produced any other example of defendant POMPILIO, or

any other City of Beacon police officer, who engaged in malicious prosecution." (City of

Beacon Reply Br. 3)

      1.    Applicable Law

          a.    Section 1983 Framework

Title 42, United States Code, Section 1983 provides, in pertinent part:

> Every person who under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for
> redress. . . .

42 U.S.C. § 1983. "In Monell [v. Department of Social Services, 436 U.S. 658 (1978)], the

Supreme Court ruled . . . that municipalities were liable under § 1983 to be sued as 'persons'

within the meaning of that statute, when the alleged unlawful action implemented or was executed pursuant to a governmental policy or custom." Reynolds v. Giuliani, 506 F.3d 183, 190 (2d Cir. 2007) (citing Monell, 436 U.S. at 691, 694).

"'[A] municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of respondeat superior.'" Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 478 (1986)). "To prevail against a municipality on a § 1983 claim, a plaintiff must demonstrate both an injury to a constitutionally protected right and that the injury was caused by a policy or custom of the municipality or by a municipal official responsible for establishing final policy." Hartline v. Gallo, 546 F.3d 95, 103 (2d Cir. 2008) (citations and internal quotation marks omitted) (emphasis added). "Monell's policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." Reynolds, 506 F.3d at 192. "Such a pattern, if sufficiently persistent or widespread as to acquire the force of law, may constitute a policy or custom within the meaning of Monell." Id. (citing Monell, 436 U.S. at 690–91).

"Though section 1983 provides the federal claim," this Court must "borrow the elements of the underlying malicious prosecution tort from state law." Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir. 1994).

> The elements of a malicious prosecution claim under New York law are "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor." In order to allege a cause of action for malicious prosecution under § 1983, [a plaintiff] must assert, in addition to the elements of malicious prosecution under state law, that there

16

was (5) a sufficient post-arraignment liberty restraint to implicate
the plaintiff's Fourth Amendment rights.

Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000) (citations omitted).

In alleging that he was subjected to malicious prosecution because of the City's
deliberate indifference to police officers' violation of its citizens' civil rights, Searles argues that
the City failed to properly supervise Pompilio and failed to properly discipline him. (See 3d Am.
Cmplt. ¶¶ 106–07)

b.    Failure to Supervise

A "failure to supervise claim requires allegations as to the violation itself and
policymakers' reaction to it." Amnesty America v. Town of West Hartford, 361 F.3d 113, 127
n.8 (2d Cir. 2004). "Moreover, in the context of a failure-to-supervise case, deliberate
indifference may be established by showing that policymaking officials deliberately ignored an
obvious need for supervision." Id. See Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir.
1995) ("An obvious need may be demonstrated through proof of repeated complaints of civil
rights violations; deliberate indifference may be inferred if the complaints are followed by no
meaningful attempt on the part of the municipality to investigate or to forestall further
incident."). In other words, "plaintiff['s] evidence must establish only that a policymaking
official had notice of a potentially serious problem of unconstitutional conduct, such that the
need for corrective action or supervision was 'obvious,' and the policymaker's failure to
investigate or rectify the situation evidences deliberate indifference, rather than mere negligence
or bureaucratic inaction." Amnesty America, 361 F.3d at 128 (quotation omitted).

c.    Failure to Discipline

"[M]unicipal inaction such as the persistent failure to discipline subordinates who
violate civil rights [can] give rise to an inference of an unlawful municipal policy of ratification

17

of unconstitutional conduct within the meaning of Monell." Batista v. Rodriguez, 702 F.2d 393,

397 (2d Cir. 1983). See Thomas v. Roach, 165 F.3d 137, 145 (2d Cir. 1999) ("A municipality

may be liable under § 1983 in cases of police brutality where the City's failure to supervise or

discipline its officers amounts to a policy of deliberate indifference."); Fiacco v. City of

Rensselaer, 783 F.2d 319, 331–32 (2d Cir. 1986) (concluding that "evidence was sufficient as a

matter of law to permit a rational juror to find that the City had a policy of nonsupervision of its

police officers that amounted to a deliberate indifference to their use of excessive force," where

it was reasonable to infer that police chief conducted "superficial" investigations of citizen

complaints and failed to discipline officers, record complaints, or engage in any further review).

Cf. Longin by Longin v. Kelly, 875 F. Supp. 196, 201 n.5 (S.D.N.Y. 1995) ("[T]he failure to

discipline a single officer cannot give rise to an inference of deliberate indifference without

further evidence of a municipal policy or practice.").

      2.    Legal Analysis

          a.    Failure to Supervise Theory

      Searles's failure to supervise claim is premised on the theory that the mayor of

Beacon abdicated her responsibility to oversee reports of police misconduct. (Pltf. Br. 16–17)

Searles notes that Beacon City Code § 51-17(D) provides that, "[i]t shall be the duty of the

Mayor to entertain any written complaint received from any person against any member of the

Police Department" (Schindler Decl., Ex. P (Beacon City Code § 51-17)), and claims that the

mayor denied having any oversight role as to the police.

      Searles also argues that while the City's "Use of Force" policy requires that any

use of force by a police officer must be reported in writing, until 2005 the City had no "use of

force" form. (Id. at 17)  Searles further notes that the Police Department's arrest report and

incident report forms do not contain boxes requiring officers to explain their use of force. (Id.)

Searles's evidence, however, fails to establish "that a policymaking official had notice of a potentially serious problem of unconstitutional conduct, such that the need for corrective action or supervision was 'obvious,' and [that] the policymaker's failure to investigate or rectify the situation evidences deliberate indifference, rather than mere negligence or bureaucratic inaction." Amnesty America, 361 F.3d at 128 (quotation omitted). First, there is no evidence that the mayor ever refused to entertain any complaint from the public about a police officer or that the mayor or any other policymaking City official ever "had notice of a potentially serious problem of unconstitutional conduct." Id. Second, even if the mayor and city administrator were not involved in investigating police misconduct, it is undisputed that other policymaking City officials – namely, the police chief and the patrol lieutenant – regularly met to discuss reports and investigations of police misconduct. (City of Beacon R. 56.1 Stat. ¶¶ 47–48) Third, given the detailed nature of the "Use of Force" policy (Klasna Decl., Ex. J), and the protocol among the police department, labor counsel, and the district attorney's office for investigating and reviewing suspected violations of that policy (City of Beacon R. 56.1 Stat. ¶¶ 43–45), the lack of a "Use of Force" form and "use of force" boxes on the incident report and arrest forms are insufficient to support an inference of deliberate indifference. Cf. Vann, 72 F.3d at 1049 ("[D]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incident.").

> b.  Failure to Discipline Theory

Searles's failure to discipline theory rests on the City's purported failure to investigate complaints against Pompilio and other officers, such as Ramona Bowles's 1999 complaint that Pompilio had pushed her. (Pltf. Br. 17) But Searles has not provided evidence that the City's "response to complaints of use of excessive force by City police officers was

uninterested and superficial," Fiacco, 783 F.2d at 331, or that there was a "persistent failure to discipline subordinates who violate civil rights" which "could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of Monell." Batista, 702 F.2d at 397. There is no dispute that, following a review of a patrol lieutenant's report by the police chief, labor counsel, and the district attorney's office, the protocol was that "disciplinary action would be taken against the officer if a violation was found." (City of Beacon R. 56.1 Stat. ¶ 45) Further, it is undisputed that in this instance, the police chief completed an investigation regarding Searles's complaint about Pompilio's use of force. (Id. ¶ 47) And it is also undisputed that before Searles's September 2001 arrest, "the only civilian complaint received by the Police Department against POMPILIO was brought by Ramona Bowles in 1999. . . ." (Id. ¶ 46) Even assuming that the City improperly failed to discipline Pompilio with respect to the Bowles incident, "the failure to discipline a single officer cannot give rise to an inference of deliberate indifference without further evidence of a municipal policy or practice." Longin by Longin, 875 F. Supp. at 201 n.5. Here, there is no evidence that the City failed to investigate the Bowles incident, no evidence that the City should have disciplined Pompilio with respect to that incident, and no evidence that there was a policy or practice of refusing to discipline police officers who violated citizens' rights.[7]

---

[7] Searles also argues that City officials failed to adequately investigate allegations of police misconduct made by Jarrett Hawkins, Samuel Parker, and Gerald McNair. (Pltf. Br. 16–17) Because the 2002 complaint by Hawkins "was not made until after the incident involving [P]laintiff," the City argues that this complaint could not have provided "notice to the CITY or its officials of the alleged malicious prosecution committed by [D]efendant Pompilio" in 2001. (City of Beacon Reply Br. 4) This Court agrees. Similarly, because Searles provides no evidence that the alleged Parker and McNair incidents occurred before September 4, 2001, this Court cannot find that those allegations could have provided notice to the City or its officials of malicious prosecutions initiated by its officers.

20

3.    Conclusion

For the foregoing reasons, Searles's allegations are insufficient to raise an

inference of municipal liability under Section 1983. Accordingly, the City's motion for

summary judgment on Count 13 is granted.[8]

## VII.   **WHETHER POMPILIO IS ENTITLED TO QUALIFIED IMMUNITY**

Pompilio asserts that as a governmental official performing discretionary

functions, he is entitled to qualified immunity because his actions were in good faith and he had

"arguable probable cause."[9] (Pompilio Br. 12) In evaluating whether a defendant is entitled to

qualified immunity, the Court must: (1) "determine whether plaintiff has alleged a violation of a

---

[8]  Searles argues that the City's motion for summary judgment should be denied because the
City's electronic filing of its motion does not satisfy the service requirements of Fed. R. Civ. P. 5
or Local Civil Rule 5.2 in that the City failed to e-mail notice of its electronic filing to Searles's
attorney or serve its motion papers by mail or personal delivery. (Pltf. Br. 10) The City counters
that it understood that this case became an ECF case in or about December 2006, that Searles had
also filed documents using the ECF method, and that Searles was not prejudiced because he had
adequate time to review and respond to the City's motion. (City of Beacon Reply Br. 1–2) The
City further argues that Searles "was well aware that the CITY was filing the motion for
summary judgment, as plaintiff's counsel and this office discussed the filing of the motion on the
day that it was filed with the Court." (Id. at 1)

Given that this action was not officially designated as an ECF case until October 2008, the City's
March 2008 electronic filing of its summary judgment motion failed to satisfy the service
requirements of Rule 5(b) and Local Civil Rule 5.2. This violation of the rules, however, does
"not provide a sufficient basis" to deny the City's summary judgment motion, "because
Plaintiff[] had actual notice that the summary judgment motion had been filed." See McKinnie
v. Roadway Express, Inc., 341 F.3d 554, 557 (6th Cir. 2003) ("The violation of Rule 5(b),
however, does not provide a sufficient basis to reverse the district court's summary judgment
because Plaintiffs had actual notice that the summary judgment motion had been filed.")
(affirming grant of summary judgment even though "electronic service . . . was inadequate" and
thus, defendant's "summary judgment motion was not served on Plaintiffs in conformity with
Rule 5(b)").

[9]  The qualified immunity defense available to Pompilio is not available to the City. Vives v.
City of New York, 524 F.3d 346, 350 (2d Cir. 2008) ("[U]nlike individual defendants, a
municipality may not assert qualified immunity based on its good faith belief that its actions or
policies are constitutional. . . .").

constitutional right;" (2) "consider if the violated right was clearly established at the time of the conduct;" and (3) decide whether Searles has "demonstrate[d] that defendant[]'s actions were not objectively reasonable." Harhay v. Town of Ellington Bd. Of Educ., 323 F.3d 206, 211 (2d Cir. 2003). Here, Searles has satisfied the first two elements by alleging violations of clearly established constitutional rights, including his Fourth Amendment right to be free from unreasonable seizures of his person (Counts 1 and 9), his First Amendment right to freedom of speech (Count 3), and his Fifth Amendment right to due process (Counts 4–5). See Rivera v. Leto, No. 04 Civ. 7072 (PGG), 2008 WL 5062103, at *7 (S.D.N.Y. Nov. 25, 2008) (holding that first two elements were satisfied where plaintiffs "alleged a violation of their constitutional right not to have their home entered and searched without a warrant in the absence of exigent circumstances" and the law concerning this right was clearly established). With respect to the third element, "summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." Kerman v. City of New York, 261 F.3d 229, 240 (2d Cir. 2001).

Pompilio asserts that, in determining objective reasonableness, a standard less than actual probable cause known as "arguable probable cause" is appropriate. (Pompilio Br. 12) Pompilio further claims that he is entitled to qualified immunity under this standard because – even assuming he did not have probable cause – the arrest was made in good faith. (Id.) But "'[a]rguable' probable cause should not be misunderstood to mean 'almost' probable cause." Jenkins, 478 F.3d at 87 ("The essential inquiry in determining whether qualified immunity is available to an officer accused of false arrest is whether it was objectively reasonable for the officer to conclude that probable cause existed."). As noted earlier, there are hotly disputed issues of material fact as to whether Pompilio had probable cause to arrest Searles.

Moreover, whether Pompilio acted in good faith is immaterial to his entitlement to summary judgment on qualified immunity grounds and, in any event, is a question for the jury. See Jenkins, 478 F.3d 87 n.9 ("The Supreme Court has stated that to demonstrate entitlement to qualified immunity, the defendant need not establish subjective good faith, for that inquiry is inherently factual and requires resolution by jury.") (citing Harlow v. Fitzgerald, 457 U.S. 800, 815–16 (1982)).

Because there are material issues of fact as to whether Pompilio had probable cause to arrest Searles, this Court cannot determine as a matter of law that Pompilio's actions were objectively reasonable. Accordingly, Pompilio is not entitled to summary judgment on grounds of qualified immunity.

## CONCLUSION

For the foregoing reasons, Defendant Pompilio's motion for summary judgment is

DENIED.  Defendant City of Beacon's motion for summary judgment is GRANTED as to Count

13, but is otherwise DENIED.

The Clerk of the Court is directed to terminate Defendants' summary judgment

motions (Docket Nos. 47 and 48).

Dated: New York, New York
      July 23, 2009

                    SO ORDERED.

                    Paul G. Gardephe
                    United States District Judge